**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | No. 4:14-CR-00254 |
| v. | | (Judge Brann) |
| CHRISTOPHER G. LEE, | | |
| Defendant. | | |

## MEMORANDUM OPINION

### JANUARY 10, 2020

## I.    BACKGROUND

In 2015, Christopher G. Lee was charged in a second superseding indictment with two counts of knowingly enticing a minor to travel in interstate commerce to engage in criminal sexual activity, in violation of 18 U.S.C. § 2422(a) (Counts 1 and 8), two counts of transporting a minor in interstate commerce to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a) (Counts 2 and 7), receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count 3), possessing child pornography, in violation of 18 U.S.C. § 2252A(b)(2) (Count 4), using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, in violation of 18 U.S.C. § 2251(a) (Count 5), and attempting to alter, destroy or conceal evidence, in violation of 18 U.S.C. § 1512(c)(1) (Count 6).[1]

---

[1]    Doc. 86.

The United States Court of Appeals for the Third Circuit summarized the basis for the charges thusly: "Lee supervised high school aged minors who volunteered as docents at the Boal Mansion Museum in Boalsburg, Pennsylvania. After one of the young docents accused him of sexual assault, the police obtained a search warrant for the Boal Mansion, where Lee resided."[2] A search of Lee's electronic devices revealed child pornography and—as relevant here—" photographs and videos that Lee had taken of the teenagers participating in the docent program" which had been edited "to focus on the children's genitals, buttocks, or pubic areas."[3] Some of these cropped images were included in graphic sexual stories that Lee wrote about children.[4] Those cropped images formed the basis of Count 5.

In early 2016, this Court granted Lee's motion to sever and severed four of the counts from the second superseding indictment.[5] Trial proceeded against Lee as to Counts 3 through 6 of the second superseding indictment;[6] after a four-day trial, a jury convicted Lee of all four counts.[7] The Court thereafter sentenced Lee to a

---

[2]   *United States v. Lee*, 701 F. App'x 175, 177 (3d Cir. 2017).

[3]   *Id.* at 178.

[4]   *Id.*; Doc. 205 at 24-26.

[5]   Docs. 120, 121.

[6]   After trial concluded, the remaining counts were dismissed at the Government's request. (Docs. 202, 204).

[7]   Doc. 163.

total term of 216 months' imprisonment.[8]  On appeal, the Third Circuit affirmed Lee's convictions.[9]

In March 2019, Lee filed a timely 28 U.S.C. § 2255 motion challenging his convictions based upon allegations of ineffective assistance of counsel.[10]  First, Lee asserts that trial counsel was ineffective for failing to request appropriate jury instructions.[11]  Specifically, Lee contends that trial counsel should have requested an instruction that the sixth *Dost*[12] factor must be viewed objectively and should not be viewed as an independent factor.[13]  Moreover, Lee argues that trial counsel should have requested an instruction that the jury may consider the lapse in time between when Lee took the photographs and when he cropped them to determine whether Lee "used" or "employed" a minor to produce child pornography.[14]

---

[8]    Doc. 191.

[9]    *Lee*, 701 F. App'x at 177.

[10]   Doc. 213.  Although Lee challenges all of his convictions, his arguments relate solely to Count 5, and he argues that the remaining convictions "should be vacated due to prejudicial spillover."  *Id.* at 35.

[11]   Doc. 217 at 16-23.

[12]   *United State v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986).  In *Dost*, the court set forth six non-exhaustive factors that courts may use to determine whether a depiction includes the lascivious exhibition of the genitals or pubic area.  *Id.* at 832.  The sixth factor is "whether the visual depiction is intended or designed to elicit a sexual response in the viewer."  *Id.*  The Third Circuit has adopted those factors for use by district courts within the circuit.  *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989).

[13]   Doc. 217 at 16-21.

[14]   *Id.* at 21-23.

Second, Lee faults trial counsel for failing to move to dismiss Count 5.[15]  Lee asserts that, had trial counsel not conceded that the cropped images were lascivious, this Court would have dismissed Count 5, as only one *Dost* factor is present in the cropped photographs.[16]  Lee further argues that cropping non-pornographic images may not, as a matter of law, create new pornographic images.[17]  Alternatively, Lee contends that, even if such cropping may violate 18 U.S.C. § 2251(a), that statute is unconstitutionally vague as applied to him because there were no identifiable minors in the cropped images.[18]

Third, Lee argues that trial counsel was ineffective for failing to place the cropped images and accompanying erotic stories in context for the jury.[19]  In that respect, Lee asserts that he likely would not have been convicted had counsel presented testimony from an art historian explaining the use of homoerotic photography in art, or had counsel presented evidence that erotic stories involving children—such as the ones created by Lee—have a "legitimate market" and are "available in public venues."[20]  Finally, Lee contends that, at the very least, the cumulative errors amount to ineffective assistance of counsel.[21]

---

[15]  *Id.* at 23-31.

[16]  *Id.* at 23-24.

[17]  *Id.* at 24-28.

[18]  *Id.* at 28-31.

[19]  *Id.* at 31-34.

[20]  *Id.* at 33; *see id.* at 31-34.

[21]  *Id.* at 34-35.

The Government has responded to Lee's § 2255 motion, but only directly addresses three of Lee's claims.[22]  The Government asserts that Lee's trial counsel was not ineffective because: (1) no case law supports the assertion that Lee was entitled to an instruction that the sixth *Dost* factor must be viewed objectively; (2) any motion to dismiss Count 5 would have been meritless, as cropping non-pornographic images may result in the creation of new pornographic images and "overwhelming evidence established that the images at issue here were pornographic"; and (3) counsel made a reasonable strategic decision to not call an art historian to testify.[23]  This matter is now ripe for disposition and, for the reasons discussed below, the Court will deny Lee's motion.

## II.    DISCUSSION

"In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims."[24] "The first part of the *Strickland* test requires 'showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[25]  In determining whether an attorney's performance is deficient, courts must "determine whether, in light of all the circumstances, the

---

[22]   Doc. 221.

[23]   *Id.*

[24]   *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).

[25]   *Id.* (quoting *Strickland*, 466 U.S. at 687).

[attorney's] acts or omissions were outside the wide range of professionally competent assistance."[26]  As the United States Supreme Court has emphasized:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[27]

"The second part [of the *Strickland* test] specifies that the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[28] "This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case.  The likelihood of a different result must be substantial, not just conceivable."[29]  In other words, a movant must establish a "a substantial likelihood" that any errors "changed the outcome of . . . trial."[30]

---

[26]  *Strickland*, 466 U.S. at 690.

[27]  *Id.*

[28]  *Bui*, 795 F.3d at 366 (quoting *Strickland*, 466 U.S. at 694).

[29]  *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks omitted).

[30]  *Branch v. Sweeney*, 758 F.3d 226, 238 (3d Cir. 2014).

## A.    Jury Instructions

Lee asserts that his trial counsel was ineffective for failing to request two separate jury instructions.[31]    First, Lee argues that trial counsel should have requested an instruction that the jury must objectively weigh whether the cropped photos were intended to elicit a sexual response in the viewer, and may not consider the sixth *Dost* factor independently.[32]    Second, Lee contends that trial counsel was deficient in failing to request an instruction that the jury may consider the lapse in time between when Lee took the photographs and when he cropped them in determining whether he used a minor to engaged in sexually explicit conduct.[33]

### i.    *Instructions Regarding the Sixth Dost Factor*

With regard to Lee's first claim, 18 U.S.C. § 2251(a) prohibits using or employing "any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct."    Sexually explicit conduct includes, as relevant here, the "lascivious exhibition of the anus, genitals, or pubic area of any person."[34]

---

[31]    Doc. 217 at 16-23.

[32]    *Id.* at 16-21.

[33]    *Id.* at 21-23.

[34]    18 U.S.C. § 2256(2)(A)(v).

In *United States v. Villard*, the Third Circuit adopted a list of six non-exhaustive factors that factfinders should consider in determining whether a depiction involves the lascivious exhibition of the genitals or pubic area of a person:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.[35]

The factfinder may also consider "any other relevant factors given the particularities of the case."[36] No single factor is dispositive and, "[a]lthough more than one factor must be present in order to establish 'lasciviousness,' all six factors need not be present."[37]

With regard to the sixth factor, the Third Circuit in *Villard* noted that "[a]lthough it is tempting to judge the *actual* effect of the photographs on the viewer,

---

[35] *Villard*, 885 F.2d at 122.

[36] *United States v. Knox,* 32 F.3d 733, 745 (3d Cir. 1994).

[37] *Villard*, 885 F.2d at 122.

we must focus instead on the *intended* effect on the viewer."[38]  Thus, "[c]hild

pornography is not created when the pedophile derives sexual enjoyment from an

otherwise innocent photo . . . [a photograph] does not become child pornography

because it is placed in the hands of a pedophile, or in a forum where pedophiles

might enjoy it."[39]  The Third Circuit further stated that "the sixth *Dost* factor, rather

than being a separate substantive inquiry about the photographs, is useful as another

way of inquiring into whether any of the other five *Dost* factors are met."[40]

 Lee asserts that the Third Circuit's decision in *Villard* mandates that any fact-

finder weigh the sixth factor objectively—that is, it should not consider "Lee's

subjective response to the images" and should consider the sixth factor simply as a

means of determining whether the other five factors are met.[41]  However, Third

Circuit precedent does not support Lee's contention.

First, as to Lee's contention that his subjective response to the cropped images

was not relevant, the Third Circuit in *United States v. Larkin*[42] reiterated that "*Villard*

instructs that the focus must be on the *intended* effect, rather tha[n] the *actual* effect,

on the viewer."[43]  While the photograph's effect on a viewer is not relevant, the

---

[38]  *Id.* at 125.

[39]  *Id.*

[40]  *Id.*

[41]  Doc. 217 at 19-20.

[42]  629 F.3d 177 (3d Cir. 2010).

[43]  *Id.* at 184.

effect intended by the photographer is relevant. Thus, the Third Circuit in *Larkin* examined the intent of the photographer and found persuasive that the relevant photograph was trafficked "over the internet to an interested pedophile, whom [the defendant] acknowledged 'would find them sexually stimulating because of his predilection for young children.'"[44] The fact that the photographer knew that the particular image would be sexually arousing to its intended recipient tipped the balance in favor of concluding that the image was pornographic.[45]

Lee's situation is somewhat unique, as he was both the creator and the intended viewer of the cropped photographs. The Third Circuit addressed a similar circumstance in at least one unpublished opinion, noting that the relevant inquiry is "whether [the defendant] intended or designed the videos to elicit a sexual response in the viewer—that is, himself."[46] As the photographer, it was relevant and proper for the jury to consider whether Lee intended for the photographs to be sexually arousing to himself, i.e., "whether the visual depiction is intended or designed to elicit a sexual response in the viewer."[47] Because the jury could properly consider

---

[44] *Id.*

[45] *Id.* at 184-85.

[46] *United States v. Clark*, 468 F. App'x 102, 104 (3d Cir. 2011).

[47] *Villard*, 885 F.2d at 122.

Lee's subjective view of the cropped photographs, his trial counsel was not ineffective for failing to argue in favor of an instruction to the contrary.[48]

Second, the Court finds that trial counsel was not ineffective in failing to request that the jury be instructed that the sixth *Dost* factor is not an independent factor but is instead "useful as another way of inquiring into whether any of the other five *Dost* factors are met."[49]  Admittedly, the Third Circuit has been somewhat inconsistent with its application of the sixth *Dost* factor.

For example, in *United States v. Larkin* the Third Circuit spent considerable time analyzing the sixth *Dost* factor.  When examining one photograph, the court determined that, while consideration of the first five *Dost* factors presented "a close call . . . [u]ltimately, it is *Dost* factor six that tips the balance on the side of qualifying the photograph as exhibiting lascivious conduct."[50]  The Third Circuit took careful note of the evidence that demonstrated the defendant subjectively intended for the photographs to elicit sexual arousal in its recipient, including the defendant's statement that the recipient "would find [the photographs] sexually stimulating because of his predilection for young children."[51]

---

[48]  *See Bui*, 795 F.3d at 366-67 (noting "[w]e have reasoned that there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument" (internal quotation marks omitted)).

[49]  *Villard*, 885 F.2d at 125.

[50]  *Larkin*, 629 F.3d at 184.

[51]  *Id.*

In analyzing a different photograph, the court observed that "alone, none of the identified *Dost* factors sufficiently demonstrate lasciviousness. But given the particularities of the case, the presence of the sixth *Dost* factor, which when coupled with the other factors, tips the scale in favor of categorizing the image as lascivious."[52] The Third Circuit concluded that the sixth *Dost* factor was present because the defendant sent the image "to known pedophiles," confirmed the recipient's sexual preferences, and had the minor pose in such a way as to emphasize her breasts.[53] If the sixth *Dost* factor could not be treated as a separate factor and was merely a shorthand for asking whether the first five factors were satisfied, then the Third Circuit's conclusion that "the presence of the sixth factor, which *when coupled with the other factors*, tips the scale in favor of categorizing the image as lascivious"[54] would make little sense.

Similarly, in *United States v. Strausbaugh*, an unpublished opinion, the Third Circuit applied the *Dost* factors and concluded that "the sixth [*Dost* factor] is [present], as Strausbaugh's husband testified at trial that the pictures of the child were taken for his own personal use, that Strausbaugh knew that the pictures were for that purpose, and that Strausbaugh had reason to believe her husband looked at

---

[52]  *Id.* at 185.

[53]  *Id.*

[54]  *Id.* (emphasis added).

child pornography."[55]  This marks a clear application of the sixth *Dost* factor as a separate consideration, rather than a mere shorthand to again ask whether the image is lascivious.

In contrast, in *Doe v. Chamberlin*, the Third Circuit did not apply the sixth *Dost* factor to its analysis after remarking that "[t]he final *Dost* factor simply puts again the underlying question: Is the exhibition lascivious?"[56]  And in *United States v. Franz*, the Third Circuit reiterated that "[t]he sixth factor is not a separate substantive inquiry about the photographs"[57] and, after analyzing the first five *Dost* factors, simply noted that "[s]ixth, all of the facts addressed above suggest that the image was intended to elicit a sexual response in the viewer."[58]

Although this case law is somewhat muddled, the Court draws from it a simple conclusion: direct or circumstantial evidence demonstrating a photographer's intent in creating photographs is relevant in any analysis under the *Dost* factors.[59]  Whether that intent is considered under the sixth *Dost* factor or separately as a different "relevant factor[] given the particularities of the case"[60] is immaterial.  The jury was

---

[55]   534 F. App'x 175, 178 (3d Cir. 2013).

[56]   299 F.3d 192, 196 (3d Cir. 2002).

[57]   772 F.3d 134, 157 (3d Cir. 2014).

[58]   *Id.* at 158.

[59]   *See, e.g.*, *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011) ("Although the primary focus in evaluating the legality of the charged photographs must be on the images themselves, . . . the cases reveal that the intent and motive of the photographer can be a relevant consideration in evaluating those images" (citations omitted)).

[60]   *Knox*, 32 F.3d at 745.

permitted to consider whether Lee intended to be sexually aroused by the cropped images; an instruction that implied the contrary would have misled the jury, and the Court would not have given such an instruction. Thus, the Court cannot find that trial counsel was deficient in failing to request an instruction that the sixth *Dost* factor may not be considered independently. Moreover, given that the jury could properly consider Lee's subjective intent as a factor in determining whether the cropped images were lascivious, there is no substantial likelihood that such an instruction—if given—would have altered the outcome of the trial.

ii.     *Instructions Regarding Lapse of Time*

Next, Lee contends that trial counsel was ineffective in failing to request an instruction that the jury could consider the lapse in time between when Lee took the photographs and when he cropped them in deciding whether the cropped images were lascivious in nature.[61] The Court finds no deficient performance in this respect.

The Court has found no case—and Lee points to none—where a court has issued Lee's proposed jury instruction or held that the time gap between taking a photograph and subsequently editing it is relevant to whether a defendant used a minor to create child pornography. Indeed, such a conclusion would be counterintuitive. Plainly, Lee did not create child pornography when he took innocuous photographs of teenagers engaged in ordinary activities. It was not until

---

[61] Doc. 217 at 21-23.

the images were cropped that their focal point became the children's pubic areas. It was Lee's intent in editing the photographs that was relevant to whether he used a minor, not his intent in taking the original, non-pornographic images. Thus, as discussed in more detail below, by cropping the photographs, Lee created new images that must be viewed in their own right.[62]

This is in accordance with plethora of case law in a similar context addressing the prohibition on "morphing" child pornography, where, "[r]ather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity."[63] Numerous circuit courts have concluded that the altered images may constitute new, prohibited child pornography.[64] Thus, the moment Lee cropped the images was the moment that he used or employed the children, and there was no relevant time gap for the jury to consider. The Court concludes that trial counsel was not ineffective for failing to request an instruction that had no legal basis, and which would not have been given by the Court.[65]

---

[62] *See* pp. 20-24.

[63] *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 242 (2002).

[64] *See Shoemaker v. Taylor*, 730 F.3d 778, 786 (9th Cir. 2013); *Doe v. Boland,* 698 F.3d 877, 883-84 (6th Cir. 2012); *United States v. Hotaling,* 634 F.3d 725, 728-30 (2d Cir. 2011); *United States v. Bach,* 400 F.3d 622, 632 (8th Cir. 2005).

[65] Lee also asserts he was entitled to a theory of defense instruction and counsel was ineffective for failing to request such an instruction. (Doc. 217 at 22-23). Lee does not explain or detail which theory of defense instruction counsel should have requested; to the contrary, his arguments focus on general criminal instructions, not instructions related to a theory of

## B. Issues Related to Failure to Move to Dismiss Count 5

Next, Lee argues that trial counsel was ineffective for conceding that the cropped images were lascivious because, absent such a concession, Lee asserts that it is likely the jury would have concluded that the images were not lascivious as only one *Dost* factor was present.[66]  Second, Lee contends that trial counsel was ineffective for failing to move to dismiss Count 5 on the grounds that (1) the cropping of non-pornographic images can never create new pornographic images and (2) 18 U.S.C. § 2251 is unconstitutionally vague as applied to Lee.[67]

### i. *Concession That Images Were Lascivious*

The Court disagrees with Lee that trial counsel was ineffective for conceding that the cropped images were lascivious, as his concession was based on a reasonable trial strategy.  Rather than argue that the cropped images were not lascivious which, as discussed below, is a dubious argument, counsel instead sought to convince the jury that a third party was responsible for cropping the photographs that were found on Lee's computer.[68]  In that vein, trial counsel elicited testimony that Lee's computers were easily accessible by dozens of people over a course of years—

---

defense.  (*See* Doc. 217 at 21-23).  Consequently, the Court cannot find that trial counsel was ineffective with respect to a missing theory of defense instruction.

[66]  Doc. 217 at 23-24.

[67]  *Id.* at 24-31.

[68]  *See* Doc. 217-1 at 3 (statement from trial counsel that "[m]y approach to the case was that we were not defending child pornography but that the case was instead about lack of security on the Boal Mansion Museum's computer system").

including volunteers at the museum, foreign students, and interns—and that anyone could have accessed Lee's personal account if given the password to that account.[69] Testimony also established that "everybody knew the password" to Lee's computers and account.[70]

Trial counsel's strategy—eschewing an argument with little likelihood of success in favor of the more promising argument that it was not Lee who created the cropped images—cannot be said to have been unreasonable.[71] Of course, counsel's strategy ultimately failed, and it is tempting to conclude that a sounder strategy would have been to challenge the lasciviousness of the cropped photographs. Nevertheless, this Court is mindful that great pains must be taken "to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time" of the trial.[72] Given the information available at trial and the relatively strong evidence of lasciviousness, counsel's decision to focus the jury only on the question of whether Lee cropped the images was reasonable.

---

[69] Doc. 206 at 107-13, 138-39, 233-39; Doc. 207 at 286-89, 291-95, 435-36, 442-46; Doc. 208 at 507-24.

[70] Doc. 207 at 445; *see id.* at 446.

[71] Lee now asserts that the defense was more salient to Counts 3 and 4, and "was far less appropriate to [Count 5] in which the cropped images were tied to stories that had been created and modified under the use account of Christopher G. Lee." (Doc. 217 at 32). This, however, is not accurate. Trial counsel took pains to point out that numerous individuals had access not only to Lee's computers, but also to Lee's account, and put forth the idea that someone else may have written the stories to which the cropped photographs were attached. (Doc. 207 at 445-46; Doc. 208 at 518-20).

[72] *Strickland*, 466 U.S. at 689.

The evidence before the jury established at least three of the *Dost* factors.  Lee concedes in this motion—as he must—that the cropped photographs focused on the pubic area of the minors, satisfying the first *Dost* factor.[73]  Moreover, as the Third Circuit noted on direct appeal, several of the photographs suggested a willingness to engage in sexual activity, "such as an image that appeared to depict one boy touching another boy's genitals, and another where a boy appeared to be touching himself."[74] This satisfies the fifth *Dost* factor.  Finally, given the context of these pictures—the pictures were cropped to focus on the pubic region and many were included in stories describing graphic sexual relations with and among children—there is evidence that Lee intended for the images to elicit a sexual response in himself, thereby satisfying the sixth *Dost* factor.[75]  Consequently, even if counsel's performance were deficient, there is no substantial likelihood that trial counsel's decision to concede that the images were lascivious "changed the outcome of . . . trial."[76]

---

[73]  Doc. 217 at 24.

[74]  *Lee*, 701 F. App'x at 182 n.6.

[75]  *See United States v. Stewart*, 729 F.3d 517, 527 (6th Cir. 2013) ("The jury could have reasonably inferred that the act of image editing, combined with the peculiar composition of the resultant images, demonstrated that the images were designed or intended to elicit a sexual response in the viewer"); *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987) (noting that by closely focusing on a child's genitalia, the "pictures featured the child photographed as a sexual object" thus supporting the conclusion that the photographer took the photographs "to suit his peculiar lust").

[76]  *Branch*, 758 F.3d at 238.

ii.    *Failure to Move to Dismiss Count 5*

Lee next asserts that, for two reasons, trial counsel was ineffective for failing to move to dismiss Count 5.[77]  First, Lee argues that the Court likely would have dismissed Count 5 because, as a matter of law, pornographic images may never be created by cropping non-pornographic images.[78]  Second, Lee believes that, in the alternative, 18 U.S.C. § 2251(a) is unconstitutionally vague as applied, because the statute does not provide fair warning that cropping non-pornographic images in such a way that a minor is not identifiable may constitute child pornography.[79]

As to Lee's first assertion, several courts have concluded that pornography may be created by altering non-pornographic images.  For example, in *United States v. Stewart*, the defendant took non-pornographic photographs of children playing at the beach and cropped them to focus "solely on the female genitalia of the naked, or nearly naked, child in the original image" and in other photographs brightened the images to draw attention to the children's genitalia.[80]  The United States Court of Appeals for the Sixth Circuit examined the photographs and determined that there was sufficient evidence of lasciviousness, including that "the focal point of the images was the childrens' genitalia, the children were partially clothed or nude, and

---

[77]    Doc. 217 at 24-31.

[78]    *Id.* at 24-28.

[79]    *Id.* at 28-31.

[80]    729 F.3d 517, 522 (6th Cir. 2013).

these images were cropped and brightened from larger photographs that largely were innocuous."[81]  Importantly, the Sixth Circuit held:

> Although [the defendant] contends that the act of image manipulation cannot—as a matter of law—render an image lascivious when the larger image from which it was cropped was undisputably not lascivious, his position ignores the case law which holds that a jury may consider evidence of composition, framing, and focus to support a finding of lasciviousness.[82]

And in *United States v. Horn*, the United States Court of Appeals for the Eighth Circuit examined a conviction that included—in part—videos of children at the beach in swimming suits and playing nude on a jungle gym.[83]  Although the videos in their totality were largely innocuous, the defendant captured still images from the videos.  As the Eighth Circuit summarized, **"**[s]hots of young girls are freeze-framed at moments when their pubic areas are most exposed, as, for instance, when they are doing cartwheels; and these areas are at the center of the image and form the focus of the depiction."[84]  The Eighth Circuit rejected an argument similar to that presented in *Stewart*:

> [The defendant] argues that an otherwise innocent video tape of nude children cannot be made into a lascivious exhibition of the genitals by freeze-framing.  We disagree.  By focusing the viewer's attention on the pubic area, freeze-framing can create an image intended to elicit a sexual response in the viewer.  The "lascivious exhibition" is not the work of the child, whose innocence is not in question, but of the

---

[81]  *Id.* at 527.

[82]  *Id.* at 528.

[83]  187 F.3d 781, 789 (8th Cir. 1999).

[84]  *Id.* at 790.

producer or editor of the video.  In this case, the producer or editor generated a product that meets the statutory definition of sexually explicit conduct.[85]

Similarly, in *United States v. Holmes*, the defendant "secretly recorded [a minor] while in her bathroom performing normal, everyday activities."[86]  From those videos, the defendant "created twenty-six screen captures . . . [and] two of those screen captures depict[ed] close-up views of [the minor's] pubic area."[87]  The United States Court of Appeals for the Eleventh Circuit concluded that the images were lascivious, holding that "a lascivious exhibition may be created by an individual who surreptitiously videos or photographs a minor and later captures or edits a depiction, even when the original depiction is one of an innocent child acting innocently."[88]

The Court agrees with these courts that nothing prevents a non-pornographic image from becoming pornographic through editing, and Lee points to no relevant case law to the contrary.  Although Lee relies on *United States v. Steen*[89] in support of his argument, that decision is inapposite.  There, the United States Court of Appeals for the Fifth Circuit examined a fifteen-second video, during which a minor's "pubic region is only visible for about 1.5 seconds."[90]  After examining the

---

[85]  *Id.*

[86]  814 F.3d 1246, 1251 (11th Cir. 2016).

[87]  *Id.* at 1250.

[88]  *Id.* at 1252.

[89]  634 F.3d 822 (5th Cir. 2011).

[90]  *Id.* at 827.

*Dost* factors, the Fifth Circuit determined that there was no evidence of lasciviousness.[91]  However, the video was not edited in any way, and no still shots were taken that focused on the minor's genitalia.  That the video *could* have been edited is irrelevant; it was not, and *Steen* is therefore of little assistance to Lee.  Lee further notes that in *United States v. Cunningham*, the Sixth Circuit did not dispute that cropped images of a clothed-child's genitalia was "not illegal."[92]  However, the Sixth Circuit was not called upon to address the legality of the photographs and therefore did not need to address that question—particularly when an examination of whether such images constitute child pornography is necessarily fact-intensive.[93]

At bottom, Lee's argument ignores a basic reality about the images that he cropped.  While Lee argues that photographs must be viewed in their pre-cropped totality, this argument overlooks the fact that, as discussed previously, the cropping of a photograph results in a new image which must be viewed in its own.[94]  In sum, the law—and common sense—firmly establishes that an individual may create new, pornographic images by cropping or editing non-pornographic images in such a

---

[91]  *Id.* at 827-28.

[92]  669 F.3d 723 (6th Cir. 2012).

[93]  *See, e.g.*, *Vargas v. City of Philadelphia*, 783 F.3d 962 at 975 n.14 (3d Cir. 2015) (noting that "appellants are required to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief" or such issue generally will not be considered on appeal).

[94]  *See Horn*, 187 F.3d at 790 ("By focusing the viewer's attention on the pubic area, freeze-framing can *create* an image intended to elicit a sexual response in the viewer" (emphasis added).

manner that the altered images become lascivious by, *inter alia*, shifting the focus of the photograph to the child's genitalia.

The Court similarly concludes that Lee "used" the minors for § 2251(a) purposes at the moment that he edited the photographs—thereby creating new photographs—[95]not the moment that he took the photographs.[96]  When Lee edited the photographs to focus on the children's genitalia, he at that moment used the children within the meaning of § 2251(a).  Consequently, there is no reasonable probability that the Court would have granted a motion to dismiss Count 5 based on this argument, and Lee cannot establish either deficient performance or prejudice.

The Court then must turn to Lee's final argument related to counsel's failure to move to dismiss Count 5: that 18 U.S.C. § 2251(a) is unconstitutionally vague as applied to Lee.[97]  Lee relies on a series of morphing cases to argue that § 2251(a) is unconstitutionally vague if a child is not identifiable in a cropped image.[98]  To be certain, numerous circuit courts have held that the "morphing statute," 18 U.S.C.

---

[95]  *Cf. Holmes*, 814 F.3d at 1251 (noting that "what constitutes lascivious exhibition is not concrete, and for this reason it is necessary to determine the potentially lascivious nature with respect to the actual depictions themselves" (internal quotation marks omitted)); *Ortiz-Graulau v. United States*, 756 F.3d 12, 19 (1st Cir. 2014) ("'Use' reaches a defendant's active involvement in producing the depiction even if the interpersonal dynamics between the defendant and the depicted minor are unknown").

[96]  For that reason, the cases cited by Lee in support of his conclusion that images must be viewed at the time of their creation (Doc. 217 at 27-28) are not relevant to the Court's analysis.

[97]  Doc. 217 at 28-31.

[98]  *Id.* at 29-31.

§ 2252A, is constitutional as applied to a defendant only if a child is identifiable in the altered or morphed image.[99]

However, the morphing statute is fundamentally different from statutes that address child pornography using real children. In addressing morphed images, Congress criminalized only images that use an "identifiable minor," that is, a minor "who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature."[100] This language was necessary because, on their own, digitally-manipulated photographs do not necessarily involve children and "could be applied to situations where no actual child could be harmed by the production or distribution of the image."[101] However, where the morphed image depicts an identifiable minor, it "implicates the interests of a real child" and is thus punishable by law.[102]

In contrast, the statute that Lee was convicted of violating prohibits the use of "any minor" without limitation to whether the minor is identifiable.[103] Unlike the morphing statute, 18 U.S.C. § 2251(a) always involves the use of real children. This renders the statute fundamentally different from the morphing statute, as "[t]he

---

[99] *Shoemaker*, 730 F.3d at 786; *Boland,* 698 F.3d at 883-84; *Hotaling,* 634 F.3d at 738-30; *Bach,* 400 F.3d at 632.

[100] 18 U.S.C. § 2256(9)(A)(ii); *see* 18 U.S.C. § 2252A(a)(7).

[101] *Bach*, 400 F.3d at 631 (citing *Free Speech Coal.*, 535 U.S. 234).

[102] *Id.* at 632.

[103] 18 U.S.C. § 2251(a).

underlying inquiry [in any child pornography case] is whether an image of child pornography implicates the interests of an actual minor."[104]

Unlike morphing statutes then, a conviction under § 2251(a) does not require an identifiable minor, it only requires an actual minor.[105] Here, actual children were used in the cropped photographs, and actual children were victimized by Lee's creation of child pornography. Congress has recognized that all child pornography "feeds the [child pornography] market . . . supports demand in the national market and is essential to its existence."[106] Moreover, "all child pornography offenses are extremely serious because they both perpetuate harm to victims and normalize and validate the sexual exploitation of children."[107] Congress intended to end all child pornography utilizing real children, not simply child pornography with identifiable victims, as such harms are present regardless of whether the minor is identifiable.[108]

This view of 18 U.S.C. § 2251 is necessary to implement Congress' ban of child pornography. Were child pornography that used real children deemed non-criminal simply because the victim is not identifiable in the photograph, offenders

---

[104] *Hotaling*, 634 F.3d at 729 (citing *United States v. Williams,* 553 U.S. 285, 289 (2008); *Free Speech Coal.,* 535 U.S. at 258).

[105] Indeed, at least two circuit courts have concluded that the minor need not be identified. *See United States v. Theis*, 853 F.3d 1178, 1181 (10th Cir. 2017); *Ortiz-Graulau*, 756 F.3d at 19.

[106] *United States v. Holston*, 343 F.3d 83, 90 (2d Cir. 2003).

[107] *United States v. Jenkins*, 854 F.3d 181, 192 (2d Cir. 2017) (brackets and internal quotation marks omitted).

[108] See *Ortiz-Graulau*, 756 F.3d at 19 ("In enacting 18 U.S.C. § 2251, Congress intended a broad ban on the production of child pornography and aimed to prohibit the varied means by which an individual might actively create it." (internal quotation marks omitted)).

would be virtually immune from prosecution. For example, offenders could produce child pornography and avoid all criminal liability by simply blurring or cutting out a child's face or other identifying characteristics, or by focusing an image closely on the child's genitalia. Surely, this is not what Congress intended when it criminalized the production of child pornography, and Lee's assertions cannot be squared with that intent or the plain language of § 2251(a). Because there is no reasonable probability that the Court would have dismissed Count 5 on an as-applied constitutional challenge, Lee cannot establish deficient performance[109] or prejudice resulting from trial counsel's failure to move to dismiss Count 5.

## C.    Failure to Explain Images and Stories

Lastly, Lee argues that trial counsel was ineffective for failing to place the cropped images and sexually explicit stories in context for the jury which, according to Lee, would have demonstrated to the jury that the images were not child pornography.[110] Lee contends that trial counsel should have called an expert witness in art history to discuss the history of "homoerotic photography" and explain to the

---

[109] Even if a challenge to the constitutionality of 18 U.S.C. § 2251(a) had merit, no case law supports Lee's position on this matter. "The Sixth Amendment does not require counsel for a criminal defendant to be clairvoyant" and predict unexpected developments in the law. *United States v. Harms*, 371 F.3d 1208, 1212 (10th Cir. 2004). It would ask too much of defense counsel to predict such drastic changes in the law as those requested by Lee in his § 2255 motion, and the Court cannot conclude that trial counsel was constitutionally deficient for failing to so do. *See Murray v. Carrier*, 477 U.S. 478, 486, (1986) ("the constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim").

[110] Doc. 217 at 31-34.

jury "that cropped images not terribly different from the ones underlying [Count 5] are currently hanging in museums."[111]  Additionally, Lee asserts that, had trial counsel notified the jury that a legitimate market exists for erotic stories involving children, the jury may not have concluded that such stories written by Lee were indicative of an intent to create child pornography.[112]

As to the first point, Lee presents an expert report attesting that artwork in the recent past has sometimes featured child nudity, and occasionally featured graphic adult nudity.[113]  Although trial counsel could have presented such testimony to the jury and argued that the cropped images were merely artistic photographs, he opted not to pursue such a defense based upon a legitimate trial strategy.  As trial counsel explained, "I did not consult, or consider consulting with, an art history expert with regard to the cropped images . . . [because] I believed arguing that child pornography is art falls on deaf ears."[114]

Instead of pursuing a strategy that he believed would "fall[] on deaf ears," trial counsel sought to build a case about the "lack of security on the Boal Mansion Museum's computer systems" and convince the jury that there was insufficient evidence that Lee—rather than one of the dozens of other individuals who has access

---

[111]  *Id.* at 31-33.

[112]  *Id.* at 33-34.

[113]  *See* Doc. 217-3.

[114]  Doc. 217-1 at 3.

to Lee's computer and login information—created the child pornography. Trial counsel elicited a great deal of testimony at trial establishing that numerous people had access to the computers,[115] and—although the defense ultimately failed—trial counsel could have convinced the jury that the Government failed to sustain its burden of proof. This was a reasonable tactical decision.

The Court also rejects Lee's argument that counsel's decision not to call an expert witness was not reasonable because trial counsel did not adequately research the issue prior to deciding not to call an expert witness. As the Supreme Court has emphasized, "[c]ounsel [i]s entitled to formulate a strategy that [i]s reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."[116] This is not a case where trial counsel failed to pursue an obviously meritorious defense in favor of a weaker or frivolous defense. Rather, as counsel noted in his affidavit, arguing before a jury that child pornography is art rarely succeeds as a defense,[117] and no amount of consultation with an expert likely would have changed that conclusion. Counsel thus made a reasonable decision to "avoid activities that appear distractive from more important duties"[118] and instead pursue

---

[115] Doc. 206 at 107-13, 138-39, 233-39; Doc. 207 at 286-89, 291-95, 435-36, 442-46; Doc. 208 at 507-24.

[116] *Harrington*, 562 U.S. at 107.

[117] Doc. 217-1 at 3.

[118] *Harrington*, 562 U.S. at 107.

what he viewed as a more realistic defense.[119]  The Court finds no fault in that decision.

Lee also argues that trial counsel should have explained that legitimate markets exist for the erotic child-related stories in which many of the cropped images were found.[120]  However, Lee has presented no *prima facie* evidence demonstrating that there is a legitimate market for erotic stories involving sex with and among children.  Rather, Lee relies entirely on trial counsel's affidavit stating that, during jury deliberations, counsel "was advised that a market exists outside child pornography for text stories like the ones admitted into evidence in this case, and that I should have had someone testify about that market in order to place the stories in context."[121]  However, this demonstrates—at most—that there *might* have been a legitimate market for such stories, as there is no evidence that the source of such information was reliable; indeed, the source of this information could have been Lee himself.  Lee's speculative assertions on this point are insufficient to sustain a claim of ineffective assistance of counsel.

Additionally, as set forth above, trial counsel pursued a reasonable strategy of attempting to demonstrate that a number of other individuals may have created the

---

[119] As noted previously, although Lee argues that this defense was inappropriate in defending against Count 5 because the images were found in Lee's personal account on the computer, trial counsel put forth evidence demonstrating that numerous individuals had access to Lee's computer and personal account.  (Doc. 207 at 445-46; Doc. 208 at 518-20).

[120] Doc. 217 at 33-34.

[121] Doc. 217-1 at 3-4.

child pornography and written the stories that were found on Lee's computer.[122]

Attempting to introduce evidence of a "legitimate market" for stories such as those written by Lee would risk confusing the jury about whether Lee was denying having written the stories or was instead arguing that he wrote the stories, but for legitimate purposes—especially when there is no evidence that Lee wrote the stories for any purpose other than to satisfy his own sexual predilections. At worst, such a defense could potentially have led the jury to believe that Lee was conceding that he did write the stories and, thus, did crop the accompanying images, thereby undermining his entire defense. As a consequence, the Court finds that Lee has failed to establish ineffective assistance of counsel on this claim.

Finally, Lee contends that the errors, even if not individually sufficiently prejudicial, are collectively sufficiently harmful to amount to ineffective assistance of counsel.[123] For the reasons previously discussed, the Court finds that trial counsel's performance did not fall below a reasonable standard and, thus, the cumulative error analysis is inapplicable.[124] Even if there were error, none of the

---

[122] *See* Doc. 208 at 517-20.

[123] Doc. 217 at 34-35.

[124] *See Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) ("a cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless" (internal quotation marks omitted)).

errors, considered singly or cumulatively, are sufficient to conclude that Lee suffered any demonstrable prejudice.

### D. Certificate of Appealability

Because this Court will denied Lee's § 2255 motion, this decision will not be appealable unless this Court or a circuit justice issues a certificate of appealability.[125] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."[126] To satisfy this standard Lee must demonstrate that reasonable jurists would find that the Court's assessment of the constitutional claims is debatable or wrong.[127] This Court finds that Lee has not met this burden, and the Court therefore declines to issue a certificate of appealability.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Lee did not receive ineffective assistance of counsel, and his 28 U.S.C. § 2255 motion will be denied. The Court will also deny a certificate of appealability.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[125] 28 U.S.C. § 2253(c)(1)(B).

[126] *Id.* § 2253(c)(2).

[127] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).