## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:14-CR-00254 |
| v. | (Judge Brann) |
| CHRISTOPHER G. LEE, | |
| Defendant. | |

### MEMORANDUM OPINION

### DECEMBER 2, 2020

Currently pending before the Court is Christopher G. Lee's emergency motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] Lee contends that he is entitled to release from prison due to the COVID-19 pandemic and his particular susceptibility to the virus.[2] The Government opposes the motion.[3]

## I.    BACKGROUND

In 2015, Christopher G. Lee was charged in a second superseding indictment with two counts of knowingly enticing a minor to travel in interstate commerce to engage in criminal sexual activity, in violation of 18 U.S.C. § 2422(a) (Counts 1 and 8), two counts of transporting a minor in interstate commerce to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a) (Counts 2 and 7), receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count 3), possessing child

---

[1]   Doc. 230.
[2]   *Id.*; Doc. 238.
[3]   Doc. 232.

pornography, in violation of 18 U.S.C. § 2252A(b)(2) (Count 4), using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, in violation of 18 U.S.C. § 2251(a) (Count 5), and attempting to alter, destroy or conceal evidence, in violation of 18 U.S.C. § 1512(c)(1) (Count 6).[4]

The United States Court of Appeals for the Third Circuit summarized the basis for the charges thusly: "Lee supervised high school aged minors who volunteered as docents at the Boal Mansion Museum in Boalsburg, Pennsylvania. After one of the young docents accused him of sexual assault, the police obtained a search warrant for the Boal Mansion, where Lee resided."[5] A search of Lee's electronic devices revealed child pornography and "photographs and videos that Lee had taken of the teenagers participating in the docent program" which had been edited "to focus on the children's genitals, buttocks, or pubic areas."[6] Some of these cropped images were included in graphic sexual stories that Lee wrote about children.[7]

In early 2016, this Court granted Lee's motion to sever and severed four of the counts from the second superseding indictment.[8] Trial proceeded against Lee as

---

[4]   Doc. 86.
[5]   *United States v. Lee*, 701 F. App'x 175, 177 (3d Cir. 2017).
[6]   *Id.* at 178.
[7]   *Id.*; Doc. 205 at 24-26.
[8]   Docs. 120, 121.

to Counts 3 through 6 of the second superseding indictment;[9] after a four-day trial, a jury convicted Lee of all four counts.[10]

In sentencing Lee, this Court noted the seriousness of Lee's offense, and described those crimes—which involved the victimization of children—as belonging to the "most serious" class of offenses that are "repugnant to the moral instincts of a decent people."[11] The seriousness of the offense was elevated by Lee's conduct after his arrest, when he called one of his colleagues and directed that colleague to "wipe" Lee's cellphone clean.[12] The Court further determined that a stronger sentence was required to avoid unwarranted sentencing disparities, and to deter both Lee and others from committing similar offenses in the future.[13] Weighing against a stronger sentence, however, was the fact that Lee did not sexually assault any of the victims in the charged offenses, did not produce or distribute the known pornography series, and was of relatively advanced age.[14] Upon consideration the 18 U.S.C. § 3553(a) factors, the Court sentenced Lee to a total term of 216 months' imprisonment.[15] On appeal, the Third Circuit affirmed Lee's convictions.[16]

---

[9]   After trial concluded, the remaining counts were dismissed at the Government's request. (Docs. 202, 204).
[10]  Doc. 163.
[11]  Doc. 210 at 29.
[12]  *Id.* at 29.
[13]  *Id.* at 29, 31.
[14]  *Id.* at 29-30.
[15]  Doc. 191.
[16]  *Lee*, 701 F. App'x at 177.

Lee is currently incarcerated at the Allenwood Low Security Federal Correctional Institute, located in Allenwood, Pennsylvania, and has filed this emergency motion for compassionate release.[17] In his motion, Lee asserts that he is 72 years of age and suffers from several medical issues, including a left bundle branch block, prediabetes, and a low white blood cell count, all of which place him at a higher risk of serious illness or death should he contract COVID-19.[18] The Government argues that Lee has not established that extraordinary and compelling reasons exist to grant the motion and, in any event, the relevant § 3553(a) sentencing factors and the danger that Lee poses to the public weigh against releasing him from confinement.[19] This motion is ripe for consideration and, for the following reasons, Lee's motion will be denied.

## II.   DISCUSSION

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization."[20] Congress has provided courts with the authority to modify sentences through its enactment of 18 U.S.C. § 3582(c)(1)(A). That statute permits courts to reduce an inmate's sentence if the inmate has exhausted his administrative remedies[21] and if, as relevant here,

---

[17]   Doc. 230.
[18]   *Id.* at 23.
[19]   Doc. 232.
[20]   *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007).
[21]   The Government concedes that Lee has exhausted his administrative remedies. (Doc. 232 at 13).

"extraordinary and compelling reasons warrant such a reduction."[22] Courts should

also consider the relevant § 3553(a) sentencing factors[23] and whether "the defendant

is . . . a danger to the safety of any other person or to the community, as provided in

18 U.S.C. § 3142(g)."[24]

### A.    Extraordinary and Compelling Reasons

Congress has not defined the term "extraordinary and compelling." However,

the Sentencing Guidelines define the term to include a terminal illness, or any non-

terminal illness "that substantially diminishes the ability of the defendant to provide

self-care within the environment of a correctional facility and from which he or she

is not expected to recover."[25] This definition is not, however, authoritative, as "[t]he

Commission has not updated its policy statement to account for the changes imposed

by the First Step Act, and the policy statement is now clearly outdated."[26] Thus,

while "the Policy Statement provides useful guidance for district courts in assessing

a defendant's eligibility for compassionate release, . . . it does not constrain a court's

independent assessment of whether 'extraordinary and compelling reasons' warrant

---

[22]  18 U.S.C. § 3582(c)(1)(A)(i).
[23]  *Id.*
[24]  U.S. Sentencing Guidelines Manual § 1B1.13(2).
[25]  *Id.* § 1B1.13, cmt. n.1(A).
[26]  *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020).

a sentence reduction under § 3852(c)(1)(A)."[27] "The burden rests with the defendant to show that a reduction in sentence is proper."[28]

Lee has sustained his burden of establishing that extraordinary and compelling reasons weigh in favor of granting compassionate release. As an initial matter, the Court notes that the existence of COVID-19 cannot alone justify compassionate release. As the Third Circuit has explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.[29]

Thus, to demonstrate extraordinary and compelling reasons for compassionate release, movants must show that they suffer from one or more ailments that render them particularly susceptible to serious injury or death should they contract COVID-19.

Here, Lee's age places him at an increased risk of serious complications from COVID-19.[30] The Centers for Disease Control and Prevention (CDC) notes that "**[t]he risk for severe illness with COVID-19 increases with age,** with older adults

---

[27]  *United States v. Guzman*, No. 3:16-CR-85, 2020 WL 4515476, at *3 (M.D. Pa. Aug. 5, 2020) (brackets and internal quotation marks omitted).

[28]  *United States v. Rengifo*, No. CV 1:13-CR-00131, 2020 WL 4206146, at *2 (M.D. Pa. July 22, 2020).

[29]  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

[30]  Lee contends that several of his physical ailments likewise render him particularly vulnerable to serious illness or death due to COVID-19. Because his age alone places him at a high risk, the Court need not analyze whether Lee's physical ailments likewise render him especially vulnerable to COVID-19.

at highest risk," and that "8 out of 10 COVID-19 deaths reported in the [United States] have been in adults 65 years old and older."[31] According to the CDC, individuals between the ages of 65 and 74 are five times more likely to be hospitalized after contracting COVID-19 than are younger adults between the ages of 18 and 29, and are ninety times more likely to die than are younger adults.[32] Thus, it is clear that Lee is at a high risk of serious illness or death from COVID-19 and has "shown 'extraordinary and compelling reasons' that would allow the court to grant compassionate release."[33]

### B.    Relevant Sentencing Factors

Turning next to the relevant § 3553(a) factors, the Court concludes that said factors militate against a sentence reduction. The relevant sentencing factors to consider under § 3553(a) include, *inter alia*, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness

---

[31]    *See* Centers for Disease Control and Prevention, *Coronavirus Disease 2019, People at Increased Risk, Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Nov. 30, 2020).

[32]    *Id.*

[33]    *United States v. Horton*, No. 1:13-CR-16, 2020 WL 4473405, at *4 (M.D. Pa. Aug. 4, 2020).

of the offense, to promote respect for the law, and to provide just punishment for the offense."[34]

As to the nature and circumstances of the offense and the history and characteristics of the defendant, the Court notes that the offense was a serious one. The investigation into Lee began when a minor complained to police that Lee had rubbed the minor's body and attempted to rub his genitals.[35] During a subsequent investigation, police examined Lee's computers and discovered numerous images and videos of child pornography; altogether during a partial search of Lee's files, police discovered at least 4,500 images that depicted child pornography.[36] Moreover, Lee did not simply consume child pornography, but created it. He took otherwise innocuous photos of the docents who worked and lived in his museum and cropped those images to focus on the boys' genital areas, and Lee included many of those photographs in sexually explicit stories that he authored.[37] As this Court discussed during sentencing, such conduct strikes at our most vulnerable population, children, and is accompanied by severe psychological and emotional harm to the victimized children.[38] The severity of Lee's crimes are reflected in the mandatory minimum

---

[34] 18 U.S.C. § 3553(a).
[35] Doc. 180 at 4-5.
[36] *Id.* at 5-8.
[37] *Id.* at 6-7.
[38] *See Stephens v. Clash*, 796 F.3d 281, 285 (3d Cir. 2015) (noting that Congress passed certain laws "as an attempt to address . . . the 'physiological, psychological, and emotional harm caused by the production, distribution, and display of child pornography'").

term of 180 months' imprisonment, and the 216-month sentence that this Court imposed for the convictions.

Moreover, after having committed those crimes, Lee sought to conceal his criminal conduct. As the Presentence Report recounted, from prison Lee called his colleague and cousin and instructed the man to "retrieve Lee's cellular telephone from the FBI and to 'wipe it clean' or 'have it wiped remotely' by one of the Penn State students who assists with the mansion computers."[39] This indicates to the Court a failure to take responsibility for his actions and an absence of remorse.

Although Lee does not have any previous criminal convictions, it is apparent that the instant offenses were not Lee's first criminal acts that involved minors. In 2005, Lee was charged in Pennsylvania state court with indecent assault of a person less than 13 years of age, and that charge was, remarkably, resolved through an Accelerated Rehabilitative Disposition (ARD).[40] In that case, Lee touched a ten-year-old boy's genitals while the boy was sleeping.[41] Thus, although Lee's crimes of conviction did not involve sexual molestation, it is clear that Lee has a history of such conduct, which weighs heavily against immediate release from custody.

Turning to the need to protect the public, as just discussed, Lee's history with minors indicates a need to protect the public from his criminal behavior. This is reinforced by Lee's attempt to cover up his crimes and his history of failing to

---

[39] Doc. 180 at 8.
[40] *Id.* at 15.
[41] *Id.* at 15-18.

comply with the terms of his state ARD order. His failures to abide by the terms of his ARD order included: an incident where Lee attempted to befriend a 10-year-old boy; repeatedly cancelling appointments with the state-appointed psychologist; and his refusal to agree to revised ARD conditions.[42] This conduct gives the Court some concern that Lee would struggle to comply with supervised release should he be released from custody, which further underscores the need for continued incarceration to protect the public.

That need is mitigated to some extent, however, by Lee's age. A study conducted by the United States Sentencing Commission reveals that offenders above the age of 60 with a base offense level greater than 32 for their crime of conviction have only a 3.5 percent recidivism rate.[43] Similarly, although Lee's history reveals troubling behavior, he has generally led a law-abiding life. However, given Lee's documented history of pedophilic interests and behavior dating back to at least 2005, his relatively clean criminal history only slightly undercuts the need to protect the public. Thus, these mitigating circumstances do not outweigh the strong indications

---

[42]   *Id.* at 17-18.

[43]   *The Effects of Aging on Recidivism Among Federal Offenders*, p. 17, fig. 9 (United States Sentencing Commission Study, Dec. 2017). The Court is of course cognizant of Benjamin "Disraeli's familiar statement that 'there are three kinds of lies: lies, damned lies and statistics.'" *Procter & Gamble Mfg. Co. v. Fisher*, 449 U.S. 1115, 1118 (1981) (Rehnquist, C.J., dissenting). The Commission's Study shows that the rate of recidivism fluctuates depending upon which metrics one uses. Figure 3 of that study reveals that white offenders over the age of 60 have an average 7.6% rate of recidivism, while Figure 8 reveals that offenders above the age of 60 with a criminal history category I have a 6.5% recidivism rate, and Figure 4 shows that offenders above the age of 60 with a college degree have a recidivism rate of 12.8%. Nevertheless, these figures demonstrate that, as a general matter, offenders above the age of 60 have lower rates of recidivism than their younger counterparts.

that continued incarceration is needed to protect the public, and this factor weighs against granting compassionate release. Similarly, this indicates a need to provide deterrence, not just for Lee, but for others who contemplate committing such crimes.

Turning last to the need to promote respect for the law, to provide just punishment for the offense, and to reflect the seriousness of the offense,[44] none of these sentencing goals would be met by granting compassionate release. It bears noting that Lee still has more than nine years left of his sentence to serve, meaning that he has not yet served even half of his incarcerative sentence. That lengthy sentence was imposed for good reason, given the severity of Lee's crimes. In light of these facts, a release from custody at this time simply would not promote respect for the law, provide just punishment for the offense, or reflect the seriousness of the offense. Accordingly, the Court concludes that the relevant § 3553(a) factors weigh heavily against granting Lee's motion for compassionate release.

### C.   Dangerousness

Finally, the Court must consider whether "the defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[45] As discussed above, it is apparent to the Court that Lee still presents a threat to the public, notwithstanding his age and lack of misconduct reports while

---

[44]   18 U.S.C. § 3553(a).
[45]   USSG § 1B1.13(2).

11

incarcerated. This factors therefore also weighs against granting his request for compassionate release.

**D.     Weighing the Relevant Considerations**

After weighing the relevant considerations, the Court concludes that the threat Lee poses to the public, along with the relevant § 3553(a) factors—most notably the serious nature of the offense—outweigh Lee's extraordinary and compelling reasons for compassionate release. Accordingly, the Court will deny his motion for compassionate release.

**III.   CONCLUSION**

For the foregoing reasons, Lee's emergency motion for compassionate release will be denied.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge